Robert B. Carey (SBN 011186)
John DeStefano (SBN 025440)
Tory Beardsley (SBN 031926)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
Email: rob@hbsslaw.com
        johnd@hbsslaw.com
        toryb@hbsslaw.com

*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Richard Luna, | Case No.: |
| Plaintiff, | |
| vs. | **CLASS ACTION COMPLAINT** |
| Farmers Group Property and Casualty Insurance Company f/k/a Metropolitan Group Property and Casualty Insurance Company, a Rhode Island corporation, | **JURY TRIAL DEMANDED** |
| Defendant. | |

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................... 1

II.     THE PARTIES ........................................................................................ 3

III.    JURISDICTION AND VENUE............................................................... 3

IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW ...................... 4

V.      FARMERS IMPROPERLY REFUSES TO DISCLOSE AND STACK
        LUNA'S COVERAGE............................................................................ 6

VI.     CLASS ALLEGATIONS ...................................................................... 12

FIRST CLAIM FOR RELIEF (DECLARATORY JUDGMENT).............................. 15

SECOND CLAIM FOR RELIEF (BREACH OF CONTRACT) ............................... 16

THIRD CLAIM FOR RELIEF (BAD FAITH AS TO THE CLASS).......................... 16

PRAYER FOR RELIEF ............................................................................................ 18

JURY DEMAND........................................................................................................ 19

CLASS ACTION COMPLAINT

## I.     INTRODUCTION

1.     Under Arizona law, auto insurers must permit their customers to stack policies or coverages for uninsured and underinsured ("UM/UIM") motor vehicle accident claims unless the insurers comply with two simple requirements. First, they must include plain, express, and unambiguous language disavowing the ability to stack multiple policies or coverages. *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 (Ariz. 2023). Second, they must inform their insureds of the right to select the policy or coverage that applies to the accident. A.R.S. § 20-259.01(H). The insurers can fulfill this notice requirement by either (1) including a "statement" in the policy "inform[ing]" the insured of their "right to select one policy or coverage" as "applicable to any one accident," or (2) sending the insured, within thirty days of being notified of the accident, written notice of her "right to select one policy or coverage." *Id*. Defendant never satisfied either requirement for any insured during the class period.

2.     "Stacking" refers to "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Am. Family Mut. Ins. Co. v. Sharp*, 277 P.3d 192, 196 ¶ 15 (Ariz. 2012).[1] Because UM/UIM coverage is a personal coverage—despite being associated with a vehicle—it covers the person, not the vehicle. When there are multiple vehicles, multiple UM/UIM coverages exist, and unless the insurer disclaims stacking, those coverage limits are added together to provide "stacked" benefits for a single claim. Each separate

---

[1] *See also Rashid v. State Farm Mut. Auto. Ins. Co*., 162, Ariz. 270, 272 n.2, 787 P.2d 1066, 1068 n.2 (1990) (defining "stacking" as "combin[ing] the coverages of a single policy or multiple policies issued by a single insurer"); *State Farm Mut. Auto. Ins. Co. v. Arrington*, 192 Ariz. 255, 258-60, 963 P.2d 334, 337-39 (App. 1998) (stacking occurs when "all available policies are added together to create a larger pool from which the injured party may draw in order to compensate him for his actual loss where a single policy is not sufficient to make him whole;" the insureds' "benefit of the bargain is the cumulative UIM limit . . . Thus, when their damages are higher than the limits of one policy, the other policies can be tapped to make up the difference") (internal quotations omitted).

CLASS ACTION COMPLAINT

coverage limit can be accessed to provide benefits for the same covered loss. When stacking coverages, the coverage limit is determined by adding together the UM/UIM benefits limits available under each vehicle's UM/UIM coverage.

3.     The requirement for insurers to inform the insured of their right to select one policy or coverage, whether stated in the policy or through post-loss correspondence, empowers policyholders to make informed choices regarding their coverage. This ensures that policyholders are fully aware of their options and rights, particularly in complex situations involving multiple policies and coverages, thereby enhancing transparency and confidence in the insurance process.

4.     Beyond the obligations of A.R.S. § 20-259.01(H), when an insured is injured, insurance companies must work to find all available coverage for the insured, reasonably investigate the claim and applicable law, identify and disclose coverages and limits, inform the insured accurately about available coverages and benefits, construe the policy in accordance with known law, treat its insured fairly and reasonably, give the insured's interests equal consideration, and not conceal or misrepresent pertinent policy provisions, benefits or coverages.[2]

5.     In handling UM/UIM claims for its customers with multiple covered vehicles, Defendant breached each of these duties as well as the insurance contracts themselves.

---

[2] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

CLASS ACTION COMPLAINT

6.     Plaintiff brings this action on behalf of all insureds who were deprived of their right to stack benefits by Defendant Farmers Group Property and Casualty Insurance Company f/k/a Metropolitan Group Property and Casualty Insurance Company ("Farmers").

7.     As a matter of uniform and standard practice and procedure, Defendant Farmers applied a single UM/UIM coverage limit to Plaintiff's claim even though Defendant Farmers neither included plain, express, and unambiguous language disavowing the customer's ability to stack multiple coverages on the policy nor informed the class members of the right to select which coverage to apply to the accident by including that right in the policy or timely advising class members of that right in writing. Defendant, therefore, was responsible for stacking, and for disclosing and providing UM/UIM coverage up to the stacked limits required by Arizona law and the policies but failed to do so. Defendant Farmers breached its contractual and legal duties to Plaintiff and other insureds, including underpaying the benefits due.

## II.     THE PARTIES

8.     Richard Luna, at all relevant times, was an insured on an insurance policy with Defendant Farmers providing, among other coverages, uninsured and underinsured motorist coverage on multiple vehicles.

9.     Defendant Farmers is a corporation incorporated under the laws of the State of Rhode Island and is duly licensed to administer insurance in the State of Arizona.

## III.     JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a) because the amount in controversy (including the value of both the disputed claim for $75,000 in stacked coverage and attorneys' fees incurred to date) exceeds $75,000, exclusive of costs and interest, and Plaintiff and the Defendant are citizens of different states. This Court also has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in

CLASS ACTION COMPLAINT

controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of Arizona, and Defendant Farmers is a citizen of Rhode Island (where it is incorporated and has its principal place of business, respectively).

11.     Venue is proper pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to claims arising from this Incident described herein occurred within this District and the Farmers Policies were issued in this District.

12.     Whenever it is alleged in this Complaint that Farmers did any act or thing, it is meant that Farmers and its agents, officers, servants, employees or representatives did such act or thing and when such act or thing was done, it was done with full authorization or ratification of Farmers or was done in the normal and routine course and scope of business, or with the actual, apparent and/or implied authority of Farmers and its officers, agents, servants, employees or representatives. Specifically, Farmers is liable for the actions of its affiliates, officers, agents, servants, employees, and representatives.

**IV.     GENERAL ALLEGATIONS AS TO ARIZONA LAW**

13.     Arizona's statute governing uninsured motorist ("UM") and underinsured motorist ("UIM") coverages (collectively "UM/UIM coverages") is A.R.S. § 20-259.01. It requires auto insurers to offer UM and UIM coverage on each insured vehicle and governs the terms of that coverage.

14.     Insurance policy provisions that diverge from the explicit terms of A.R.S. § 20-259.01 are void. *See, e.g.*, *Cundiff v. State Farm Mut. Auto. Ins. Co.*, 217 Ariz. 358, 174 P.3d 270 (2008); *Am. Family Mut. Ins. Co. v. Sharp*, 229 Ariz. 487, 277 P.3d 192 (2012). The statute has "a remedial purpose and must be construed liberally in favor of coverage." *Sharp*, 229 Ariz. at 492, 277 P.3d at 197 (quoting *Taylor v. Travelers Indem. Co. of Am.*, 198 Ariz. 310, 9 P.3d 1049 (2000)).

15.     Subsection (H) of A.R.S. § 20-259.01, as amended in 1997, allows insurers to draft their policies to prohibit stacking of UM/UIM coverages but prescribes a strict method for doing so. Insurers wishing to prohibit stacking must include plain, express,

CLASS ACTION COMPLAINT

and unambiguous language in the policy to that effect. *Franklin v. CSAA Gen. Ins. Co.*, 532 P.3d 1145, 1148 (Ariz. 2023). Further, insurers wishing to prohibit stacking must either draft the policy to "contain a statement that informs the insured of the insured's right to select one policy or coverage as required by this subsection," or, absent such policy language, "within thirty days after the insurer receives notice of an accident, . . . notify the insured in writing of the insured's right to select one policy or coverage." A.R.S. § 20-259.01(H).

16.    "Subsection (H) is not self-executing; insurers must include policy language incorporating its limitations." *Hanfelder v. GEICO Indem. Co.*, 244 Ariz. 475, 422 P.3d 579 (App. 2018); *see also State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 897 P.2d 631 (1995).

17.    The phrase "multiple policies or coverages" in Subsection (H) applies only "when an insured obtains coverages for several vehicles and then attempts to claim multiple [UM or] UIM coverages for the same accident." *Sharp*, 229 Ariz. at 491, 277 P.3d at 196.

18.    Subsection (H) is not exclusively limited to circumstances where multiple policies exist; it applies to multiple policies or coverages, and therefore to the stacking of UM/UIM coverages under a single multi-vehicle insurance policy. *Franklin*, 532 P.3d at 1153.

19.    Under Subsection (H), the failure to include plain, express and unambiguous policy language that prohibits stacking prevents an insurer from limiting stacking. *Id.* Independently, the "[f]ailure to notify an insured of his right to select which policy should apply in an anti-stacking provision in writing, either in the policy itself or within 30 days of any claim, prevents an insurer from limiting [stacking] coverage under Arizona law." *Schwallie v. Am. Family Mut. Ins. Co.*, No. CV-12-00681, 2013 WL 4478697 (D. Ariz. Aug. 20, 2013); *see also Franklin*, 532 P.3d at 1146 ("[I]nsurers

CLASS ACTION COMPLAINT

seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ Subsection (HH's sole prescribed method for limiting stacking.").

20.     Implied in every insurance contract in Arizona is a covenant of good faith and fair dealing owed to Plaintiff. Under the contractual covenant of good faith and fair dealing, an insurer must deal fairly with an insured, giving in all matters equal consideration to the insured's interests. *See, e.g.*, *Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

21.     The contractual covenant of good faith and fair dealing also includes an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.[3]

## V.    FARMERS IMPROPERLY REFUSES TO DISCLOSE AND STACK LUNA'S COVERAGE

22.     On October 29, 2020, Richard Luna was driving his 2013 Chevrolet Cruze when he was involved in a collision with non-party Nathan Ewin in Phoenix, Arizona.

23.     As a direct and proximate result of the collision, Richard suffered physical, emotional and economic injuries.

24.     As a direct and proximate result of the collision, Richard incurred reasonable and necessary medical expenses in excess of $25,000.

25.     Non-party Nathan Ewin was at fault for causing the October 29, 2020 collision.

26.     At the time of the collision, non-party Nathan Ewin held a policy with Infinity Insurance Company ("Infinity") providing bodily injury liability coverage in the amount of $15,000 per person, subject to an aggregate limit of $30,000 per collision.

---

[3] *See, e.g.*, Arizona Administrative Code § 20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."); *Nardelli v. Metro. Grp. Prop. and Cas. Ins. Co.*, 230 Ariz. 592, 603, 277 P.3d 789, 800 (App. 2012); *Sarchett v. Blue Shield of Cal.*, 233 Cal. Rptr. 76, 84-86, 729 P.2d 267, 275-77 (1987) ("important facet" of duty of equal consideration is "the duty reasonably to inform an insured of the insured's rights and obligations under the insurance policy"); *State Farm Mut. Auto. Ins. Co. v. Shuman*, 175 Ind. App. 186, 370 N.E.2d 941 (1977) (sustaining punitive damages when insurer attempted to induce estate of insured decedent to settle claim without disclosing or explaining all benefits and estate representative "lacked the education and experience to understand the policy terms on her own").

6

27.     Infinity paid its policy limits of $15,000 to Richard Luna.

28.     Non-party Nathan Ewin did not have any additional bodily injury liability, personal injury umbrella liability, or any other insurance coverage which may pay for the damages suffered by Richard Luna.

29.     At the time of the collision, Richard Luna held a policy with Defendant Farmers covering (1) his 2017 Chevrolet Trax; (2) his 2013 Chevrolet Cruze under Policy No. 7031606740, effective August 18, 2020 through February 18, 2021.  Coverage on each of the vehicles insured on the policy consisted of, among other things, Uninsured and Underinsured Motorist Coverage in the amount of $25,000 per person, subject to an aggregate limit of $50,000 per collision.

30.     Defendant Farmers charged $12 for the Uninsured Motorist Coverage and $48 for the Underinsured Motorist Coverage on the 2017 Chevrolet Trax.

31.     Defendant Farmers charged $11 for the Uninsured Motorist Coverage and $48 for the Underinsured Motorist Coverage on the 2013 Chevrolet Cruze.

32.     Richard Luna is an "insured" under the terms and conditions of the Uninsured and Underinsured Motorist Coverage of the Farmers policy.

33.     Non-party Nathan Ewin's vehicle is an "underinsured motor vehicle" under the terms and conditions of the Farmers policy as well as Arizona law.  See A.R.S. § 20-259.01(G).

34.     On February 15, 2022, Richard submitted a claim to Defendant Farmers seeking Underinsured Motorist benefits on the policy.  The deadline to pay the available policy limits was March 8, 2022.

35.     The February 15, 2022 claim sought payment of all Underinsured Motorist benefits available on the policy.

36.     Thereafter, Defendant Farmers paid the policy limits--$25,000—on **<u>one of the vehicles</u>** covered under Policy No. 7031606740.

CLASS ACTION COMPLAINT

37.    Defendant Farmers failed and/or refused to pay the remaining policy limits properly owed to Richard on the other vehicle on the Farmers policy.

38.    Instead, Defendant Farmers disclaimed any additional Underinsured Motorist Coverage on the policy.  Upon information and belief, Defendant Farmers alleged Stacked Underinsured Motorist Coverage was not available on the Farmers policy relying on policy language that it claims limited Underinsured Motorist Coverage to a single coverage on the policy rather than coverage on multiple vehicles, as required by Arizona law.

39.    Specifically, Defendant Farmers relied on the Limit of Liability clause, which provides:

**LIMIT OF LIABILITY**

**A.**    The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages, including prejudgment interest and post-judgment interest, due to **BI** to any one person as the result of any one accident.  This includes all damages sustained by any other person as a result of that **BI.**  Subject to this limit for "each person", the limit shown in the Declarations for "each accident" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, arising out of **BI** sustained by two or more persons resulting from any one accident.

If a single limit is shown in the Declarations for "each accident" this is the most **we** will pay for any one accident, including prejudgment and post-judgment interest.

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

This is the most **we** will pay regardless of the number of:

1.    **insureds**;
2.    claims made;
3.    vehicles shown in the Declarations;
4.    premiums shown in the Declarations; or
5.    vehicles involved in the accident.

40.    The Limit of Liability language does not preclude Stacked Underinsured Motorist Coverage.  *See Franklin v. CSAA Gen. Ins. Co.*, 255 Ariz. 409 (2023) ("Notwithstanding creative policy drafting intended to evade statutory requirements— including technical definitions of coverage and extensive limitation of liability clauses—

CLASS ACTION COMPLAINT

insurers seeking to prevent insureds from stacking UIM coverages under a single, multi-vehicle policy must employ subsection (H)'s sole prescribed method for limiting stacking."); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

41.    Even if the Limit of Liability language was sufficient—it is not—the Limit of Liability language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

42.    Defendant Farmers did not advise Richard, in writing, of his right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

43.    Accordingly, Stacked Underinsured Motorist Coverage is permitted even if the Limit of Liability language precluded stacking—which, it does not.  *See* A.R.S. § 20-259.01(H); *see also Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

44.    Upon information and belief, Defendant Farmers failed to conduct a reasonable coverage investigation to determine whether additional coverage was available on Policy No. 7031606740 including, but not limited to, its failure to advise Richard of the coverage available on the Defendant Farmers policy after he specifically demanded payment of all available coverage on the policy.

45.    Upon information and belief, Defendant Farmers failed to conduct, any, let alone a reasonable, coverage investigation to determine whether Stacked Underinsured Motorist Coverage was available on Policy No. 7031606740 including, but not limited to, its failure to advise Richard of the coverage available on the Defendant Farmers policy after he specifically payment of all available coverage on the policy.

46.    To date, Richard still has not been paid the Underinsured Motorist benefits he is entitled to receive under the terms and conditions of the Farmers policy.

CLASS ACTION COMPLAINT

47.     Upon information and belief, Defendant Farmers routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple policies insured with Farmers or any other insurer under common management, but refuses to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Farmers policies and in violation of Arizona law.

48.     Upon information and belief, Defendant Farmers routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple vehicles insured on the same policy, but refuses to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Farmers' policies and in violation of Arizona law.

49.     Richard is an "insured" under the terms and conditions of the Farmers policy.

50.     Richard contends he is entitled to Stacked Underinsured Motorist Coverage under the terms and conditions of the Farmers policy.

51.     Defendant Farmers, however, contends Underinsured Motorist Coverage is limited to a single coverage one the policy rather than multiple coverages for each vehicle on the policy, and there is no additional Underinsured Motorist Coverage on the vehicles on the Farmers policy.

52.     A dispute now exists between Richard and Defendant Farmers regarding the rights and obligations of the parties under the Farmers policy.

53.     Due to the dispute between the parties, Richard is entitled to a declaration of rights and responsibilities regarding the terms and conditions of the Farmers policy.

54.     Richard seeks a declaration from this Court that he is entitled to Stacked Underinsured Motorist Coverage on the Farmers policy.

CLASS ACTION COMPLAINT

55.     Defendant Farmers' failure to make a good faith offer and refusal to consider payment for Richard's Stacked Underinsured Motorist claim constitutes a de facto denial of benefits owed on the Farmers policy.

56.     Defendant Farmers' failure to make a good faith offer and refusal to pay the contractual Stacked Underinsured Motorist benefits owed on the policy is a breach of contract.

57.     As a direct and proximate result of the breach, Richard suffered direct and consequential damages including, but not limited to, the contractual Stacked Underinsured Motorist benefits owed under the terms and conditions of the Farmers policy.

58.     In every contract of insurance, there is inherent in it the covenant of good faith and fair dealing, which requires an insurer to, among other things, conduct a reasonable investigation, afford and makes its insured aware of all available coverages on the policy—even if they are not demanded—and treat all insureds with equal consideration.

59.     Upon information and belief, Defendant Farmers failed to conduct any, let alone a reasonable, investigation into whether Stacked Underinsured Motorist Coverage is available on the Farmers policy.

60.     In doing so, Defendant Farmers put its own interests ahead of its insured, Richard, and failed to give equal consideration to his claim.

61.     Defendant Farmers' failure to adequately investigate coverage is a breach of the covenant of good faith and fair dealing.

62.     Defendant Farmers' failure to treat Richard with equal consideration is a breach of the covenant of good faith and fair dealing.

63.     Defendant Farmer's failure to make a good faith offer is a breach of the covenant of good faith and fair dealing.

CLASS ACTION COMPLAINT

64.    Defendant Farmers' failure to make reasonable efforts to alleviate the necessity of litigation is a breach of the covenant of good faith and fair dealing.

65.    Defendant Farmers' failure to pay the contractual Stacked Underinsured Motorist benefits owed under the terms and conditions of the Farmers Policy is a breach of the covenant of good faith and fair dealing.

66.    Defendant Farmers' refusal to stack the available Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Farmers policy.  As such, Defendant Farmers' coverage position is unreasonable, is not "fairly debatable," and instead places Defendant Farmers' own interests ahead of its insured, Jesus.

67.    Defendant Farmers' refusal to provide Stacked Underinsured Motorist Coverage is a breach of the covenant of good faith and fair dealing.

68.    As a direct and proximate result of Defendant Farmers' breach of the covenant of good faith and fair dealing, Richard suffered damages.

69.    Upon information and belief, Defendant Farmers acted with a consistent pater to undermine the security of its own insurance policy to the detriment of its insureds, including Richard, to the extent that it constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause harm and constitutes conduct sufficient to incur a penalty of punitive damages.

70.    Richard is, therefore, entitled to punitive damages in an amount sufficient to stop such conduct and deter such future conduct.

## VI.    CLASS ALLEGATIONS

71.    Richard brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure. He brings this action on his own behalf and on behalf of all class participants pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

72.    Richard proposes the following class of individuals:

> From the earliest time allowable by law to the date of entry of judgment, all persons who (1) were insured under at least one policy insuring multiple

CLASS ACTION COMPLAINT

vehicles issued in Arizona by any Defendant, and (2) experienced a covered loss where the insured person received Uninsured Motorist and/or Underinsured Motorist benefits and either:

(1) The Uninsured Motorist and/or Underinsured Motorist benefits were limited to the limits of a single coverage, or

(2) The Uninsured Motorist and/or Underinsured Motorist benefits were reduced due to apportionment among multiple claimants, with the collective claim limited to the limits of coverage of a single vehicle.

73.    The requirements of Rules 23(a), 23(b)(2) and/or 23(b)(3) of the Federal Rules of Civil Procedure are met as set forth below.

74.    While the exact number of members cannot be determined, the class consists at least hundreds of Arizona residents. The members of the class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Defendant Farmers.

75.    There are questions of fact and law common to the class, including the following:

i.    Whether the Farmers policy complies with Subsection (H) of A.R.S. § 20-259.01, allowing Farmers to preclude stacking;

ii.    Whether Farmers failed to send timely notice to its insureds after an accident of their right to select one policy or coverage;

ii.    Whether Farmers concealed or failed to investigate, identify, acknowledge and disclose the existence of stacked coverages under the Farmers Policies;

iii.    Whether Farmers failed to stack policies or coverages;

iv.    Whether, through the foregoing practice, Farmers breached its contracts with its insureds;

v.    Whether, through the foregoing practice, Farmers breached the implied covenant of good faith and fair dealing and violated statutes governing unfair claims settlement practices including A.R.S. § 20-461, and Arizona Administrative Code § 20-6-801(D)(1) and (D)(2);

vi.    Whether, through the foregoing practice, Farmers caused and will continue to cause harm to its insureds;

vii.    Whether Farmers is obligated to search or reopen its closed claim files to identify, adjust and pay stacked benefits it owes under Arizona law;

CLASS ACTION COMPLAINT

viii.   Whether Plaintiff and the Class are entitled to declaratory relief;

ix.   Whether Farmers has an unlawful practice of attempting to evade and discourage any subsequent requests for stacked limits by requesting the insured sign a release of all claims in exchange for the payment;

x.   Whether Farmers' above-referenced conduct as to the Class warrants an award of compensatory damages;

xi.   Whether Farmers' above-referenced conduct as to the Class warrants an award of punitive damages; and

xii.   Whether Plaintiff and the class are entitled to an award of attorney's fees.

76.   Plaintiff has the same interests in this matter as all other members of the class, and his claims are typical of those of all members of the class. Plaintiff's claims are coincident with and not antagonistic to those of other class members he seeks to represent. Plaintiff and all class members have been harmed by Farmers' common course of conduct as outlined herein. The harm to each class member was caused by Farmers' wrongful conduct.

77.   Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the class members.

78.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(1)(A) because separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

79.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Liberty's actions are generally applicable to the class as a whole, and Plaintiff seeks, inter alia, equitable remedies with respect to the class as a whole.

80.   Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

CLASS ACTION COMPLAINT

81.     Class certification is appropriate under Federal Rule of Civil Procedure 23(c)(4) because resolution of a key fact issue common to the Class—did Farmers' conduct constitute bad faith under Arizona law—will materially advance the litigation.

82.     Absent a class action, most of the members of the class will remain ignorant of their rights and/or find the cost of litigating their claims prohibitive. Therefore, they will have no effective remedy. The class treatment of common questions of law and fact conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. Farmers has concealed, failed to disclose or misled class members about their rights and those class members will remain ignorant of their potential claims against Farmers unless court-supervised notice is ordered.

83.     Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions involving the insurance industry. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of other respective Class members and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of other members of the Class.

84.     Accordingly, Richard requests this Court certify the declaratory judgment, breach of contract and bad faith claims as a class action pursuant to Rule 23(b)(2), ARCP.

## FIRST CLAIM FOR RELIEF
## (DECLARATORY JUDGMENT)

85.     Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

86.     Plaintiff and the Class have standing to seek this relief because there is an actual controversy between the parties as to the proper interpretation and enforceability of the Farmers Policies under Arizona law, the application of A.R.S. § 20-259.01(H) to this case, Farmers' obligation to disclose the existence of stacked UM/UIM coverages, and whether Plaintiff and the Class are entitled to stack UM/UIM coverages for multiple insured vehicles.

CLASS ACTION COMPLAINT

87.    Under the circumstances, Plaintiff and the Class are entitled to a judicial declaration of their rights under the Farmers Policies, specifically that they are entitled to stack UM/UIM coverages for multiple insured vehicles under the Farmers Policies, that Farmers was required to disclose the existence of stacked coverages to them, and that Farmers was required to search and reopen its closed claim files to identify, adjust and pay stacked UM or UIM benefits once it knew its Farmers Policies and its practices did not allow it to preclude stacking under Arizona law.

### SECOND CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

88.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

89.    Each Class member (including Plaintiff) is a party to one or more of the standardized Farmers Policies.

90.    Farmers further breached those contracts by concealing or failing to identify, acknowledge, disclose, and pay the stacked UM/UIM limits of the Farmers Policies under Arizona law, despite Farmers' failure to comply with A.R.S. § 20-259.01(H), and by denying the existence of any such stacked limits.

91.    The Class (including Plaintiff) has been and continues to be damaged by Farmers' breaches of contract.

### THIRD CLAIM FOR RELIEF
### (BAD FAITH AS TO THE CLASS)

92.    Plaintiff incorporates by reference all prior allegations in this Complaint as if fully set forth herein.

93.    Inherent and implied in the Farmers Policy is a covenant of good faith and fair dealing owed to Plaintiff. Under the duty of good faith and fair dealing, an insurer must deal fairly with an insured, giving equal consideration in all matters to the insured's interests. *See, e.g., Rawlings v. Apodaca*, 151 Ariz. 149, 156-57, 726 P.2d 565, 572-73 (1986).

CLASS ACTION COMPLAINT

94.    The tort of bad faith arises when an insurer "intentionally denies, fails to process or pay a claim without a reasonable basis." *Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz. 188, 190, 624 P.2d 866, 868 (Ariz. 1981); *Wood v. Liberty Mut. Fire Ins. Co.*, No. CV-11-2380-PHX-GMS, 2012 WL 2798761, at *2 (D. Ariz., July 09, 2012). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Zilisch v. State Farm Mut. Auto. Ins. Co.*, 995 P.2d 276, 280 (Ariz. 2000). Bad faith can be established by showing "(1) the absence of a reasonable basis for denying benefits, and (2) the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim." *Wood*, 2012 WL 2798761, at *2. In addition, under Arizona law, bad faith can be established by showing that the insurer lacked a "founded belief" for its actions because of an inadequate investigation. *Rawlings*, 151 Ariz. At 160, 726 P.2d at 576.

95.    The duty of good faith and fair dealing also includes, among other things, an obligation to inform the insureds about the extent of coverage and their rights under the policy and to do so in a way that is not misleading.

96.    Farmers acted objectively and subjectively unreasonably as to the Class by concealing, or failing to identify, acknowledge, disclose, and pay benefits up to the stacked UM/UIM limits of the Farmers Policies, despite Farmers' failure to comply with A.R.S. § 20-259.01(H).

97.    Farmers did so, even though it knew or should have known the Farmers Policies failed to comply with A.R.S. § 20-259.01(H). The Class seeks as damages the value of the unpaid UM/UIM stacking benefits under Arizona law.

98.    Farmers, therefore, acted in bad faith toward Plaintiff and the Class.

CLASS ACTION COMPLAINT

99.    Farmers' conduct as to the Class was aggravated, outrageous and consciously disregarded an unjustifiably substantial risk of significant harm to its insureds who are Class members.

100.    Farmers is, therefore, liable to the Class for punitive damages, which can be proven with common evidence.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for Judgment against Farmers Group Property and Casualty Insurance Company as follows:

A.    An order appointing Plaintiff as class representative and Robert Carey as class counsel and certifying the First and Second Claims for Relief under Rule 23(b)(2), and/or (b)(3), and the Third Claim for Relief as to liability and associated punitive damages under (c)(4).

B.    A declaratory judgment that Plaintiff and the Class are entitled to stacked UM/UIM coverages under the Farmers Policies, and a declaration establishing or an order mandating that the Class is entitled to disclosure of the existence of stacked coverages.

C.    Compensatory damages for the Class in an amount to be proven at trial.

D.    Punitive damages in an amount to be proven at trial.

E.    An award of Plaintiff's attorney's fees pursuant to any applicable authority including but not limited to A.R.S § 12-341.01.

F.    Statutory interest pursuant to A.R.S. § 20-462(A).

G.    For costs and expenses incurred herein to the maximum extent permitted by law.

H.    Pre-judgment and post-judgment interest to the maximum extent permitted by law.

I.    Such other relief as the Court deems just and proper.

CLASS ACTION COMPLAINT

**JURY DEMAND**

Plaintiff demands a jury trial pursuant to Federal Rule of Civil Procedure 38 for all actions so triable.

DATED this 28th day of May 2024.

                              HAGENS BERMAN SOBOL SHAPIRO LLP

                              By: _s/ Robert B. Carey_
                                   Robert B. Carey
                                   John M. DeStefano
                                   Tory Beardsley
                                   11 West Jefferson Street, Suite 1000
                                   Phoenix, Arizona 85003
                                   Telephone:  (602) 840-5900
                                   Facsimile:  (602) 840-3012
                                   Email:     rob@hbsslaw.com
                                              johnd@hbsslaw.com
                                              toryb@hbsslaw.com

                              THE SLAVICEK LAW FIRM
                                   Brett L. Slavicek
                                   James E. Fucetola
                                   Justin Henry
                                   5500 North 24th Street
                                   Phoenix, Arizona 85016
                                   Telephone:  (602) 285-4425
                                   Facsimile:  (602) 287-9184
                                   Email:     brett@slaviceklaw.com
                                              james@slaviceklaw.com
                                              justin@slaviceklaw.com

                              _Attorneys for Plaintiff_

                                                    CLASS ACTION COMPLAINT